ROBERT WAGGENER (SBN 118450)
214 Duboce Ave.
San Francisco, CA 94103
Telephone: (415) 431-4500
rwlaw@mindspring.com

LEAH SPERO (SBN 232472)
912 Cole Street, No. 301
San Francisco, CA 94117
Telephone: (415) 343-5563
leah@sperolegal.com
**Attorneys for RUSSELL OTT**

JOHN PHILIPSBORN (SBN 83944)
507 Polk Street, Suite 350
San Francisco, CA 94102
Telephone: (415) 771-3801
jphilipsbo@aol.com

K. ALEXANDRA MCCLURE (SBN 189679)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 814-3397
alex@alexmcclurelaw.com
**Attorneys for BRIAN WENDT**

RICHARD G. NOVAK (SBN 149303)
P.O. Box 5549
Berkeley, CA 94705
Telephone: (626) 578-1175
richard@rgnlaw.com

VICKI BUCHANAN (SBN 153318)
19201 Sonoma Hwy, No. 243
Sonoma, CA 95476
Telephone: (707) 343-1907
vickimaroltbuchananpc@gmail.com
**Attorneys for JONATHAN NELSON**

ALBERT BORO (SBN 126657)
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 621-2400
ajboro@boro-law.com
**Attorney for RAYMOND FOAKES**

JOHN WALSH (MA Bar 555649)
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: (617) 851-2429
johngwalshlaw@gmail.com
**Attorney for CHRISTOPHER RANIERI**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>JONATHAN NELSON, et al.,<br><br>        Defendants. | CR No. 17-CR-00533-EMC<br><br>**DEFENDANTS' JOINT SUPPLEMENTAL MEMORANDUM REGARDING ADMISSIBILITY OF STATEMENTS UNDER FEDERAL RULE OF EVIDENCE 804(b)(3)** |

This joint supplemental memorandum responds to the Court's request for briefing addressing whether statements that implicate persons other than the declarant in criminal activity are admissible under Federal Rule of Evidence 804(b)(3).  *See* Hearing Tr., July 30, 2026, pp. 99–100.  In summary, Rule 804(b)(3) allows for the admission of statements implicating people other than the declarant in criminal activity as long as the statements subject the *declarant* to criminal liability for being involved in the activity as a participant, accessory, coconspirator, or otherwise, and the circumstances of the statements indicate that the declarant was not attempting to shift the blame and had no reason to lie. Further, statements about joint criminal activity among the declarant and others are admissible if they contain details about the criminal activity, including the means, motive, or overall scheme.  Based on the agents' notes, several of the statements that Robbie Huff made to the CHS about his and Joseph Hardisty's criminal activity would come in at a new trial under Rule 804(b)(3).

**1. Statements involving someone other than the declarant are admissible under Rule 804(b)(3).**

In *Williamson v. United States*, 512 U.S. 594 (1994), the Supreme Court articulated the standard under Rule 804(b)(3) for the admissibility of statements that incriminate the declarant and other persons in criminal activity.  The Court explained that collateral statements "that are not in any way against the declarant's interest" do not become admissible by mere "proximity to self-inculpatory statements."  *Id*. at 600.  However, Rule 804(b)(3) permits the admission of statements that inculpate both the declarant and others, as long as the statements "are truly self-inculpatory."  *Id*. at 603.

Statements are inculpatory if they give details about a crime, even if they "are on their face neutral."  *Id*.  For instance, "'I hid the gun in Joe's apartment' may not be a confession of a crime; but if it is likely to help the police find the murder weapon, then it is certainly self-inculpatory."  *Id.* Moreover, the statement "'Sam and I went to Joe's house' might be against the declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy."  *Id*.  And statements with "significant details about the crime may also, depending on the situation," come in under Rule 804(b)(3).  *Id.*

"*Williamson* does not mean that the trial judge must always parse the statement and let in only the inculpatory part."  *United States v. Paguio*, 114 F.3d 928, 934 (9th Cir. 1997).  "It means that the statement must be examined in context, to see whether as a matter of common sense the portion at

Defendants' Joint Supp. Memo. re Rule 804(b)(3)
*United States v. Nelson*, et al., No. 17-cr-00533-EMC

*1*

issue was against interest and would not have been made by a reasonable person unless he believed it to be true." *Paguio*, 114 F.3d at 934. The distrust of statements inculpating someone else "'stems largely from the presumption that such statements are self-serving, offered only to shift the blame from the declarant to another.'" *United States v. Barone*, 114 F.3d 1284, 1301 (1st Cir. 1997) (citation omitted). The question is whether the surrounding circumstances—including to whom the statement was made and whether there was any motive to lie—diminish the possibility of "'fabrication.'" *Id.*

For example, in *United States v. Nazemian*, 948 F.2d 522, 528 (9th Cir. 1991), the Ninth Circuit concluded that Rule 804(b)(3) permitted a witness to testify that a deceased declarant "told him he would not sell heroin to him without advance payment because" defendant Nazemian and another individual "had never paid him for a prior heroin transaction." The court reasoned that the statement was against the declarant's own penal interest by implicating him in a heroin transaction; the statement was not made to curry favor or shift blame; there was "no reason to think [the declarant] would be untruthful about the unpaid drug debt"; and "[t]he portion of the statement implicating Nazemian and [the other individual] is closely entwined with [declarant's] solidly inculpatory admission of his involvement." *Id.* at 530–31.

In *United States v. Slaughter*, 891 F.2d 691, 696–98 (9th Cir. 1989), the Ninth Circuit held that Rule 804(b)(3) permitted a defense investigator to testify to an unavailable declarant's statements that the declarant, along with the government's star witness and defendant Slaughter, used cocaine together the first time they met. The defense sought to introduce these statements to contradict the star witness's testimony and explain how she gained credibility with Slaughter to later entrap him. *Id.* at 697. The statements were sufficiently against the declarant's penal interest because they exposed her to state drug charges. *Id.* at 698. And there were indicia of reliability because the declarant made the same statement on two separate occasions and other evidence corroborated that the star witness used cocaine. *Id.* at 698. The Ninth Circuit reversed the defendant's conviction because the district court's exclusion of the statements "deprived Slaughter of crucial evidence of his asserted defense of entrapment and thereby deprived him of a fair opportunity to defend himself." *Id.*

Circuit courts have held in numerous other cases that a wide range of statements implicating the declarant and others are admissible under Rule 804(b)(3). *See*, *e.g.*, *United States v. Monserrate-*

Defendants' Joint Supp. Memo. re Rule 804(b)(3)
*United States v. Nelson*, et al., No. 17-cr-00533-EMC

*2*

*Valentin*, 729 F.3d 31, 52–55 (1st Cir. 2013); *United States v. Fogg*, 666 F.3d 13, 17 (1st Cir. 2011); *United States v. Williams*, 506 F.3d 151, 154–55 (2d Cir. 2007); *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004); *United States v. Moses*, 148 F.3d 277, 280–81 (3d Cir. 1998); *United States v. Tocco*, 200 F.3d 401, 414–15 (6th Cir. 2000); *United States v. Shukri*, 207 F.3d 412, 415–18 (7th Cir. 2000); *United States v. Patterson*, 819 F.2d 1495, 1504 (9th Cir. 1987); *United States v. Benveniste*, 564 F.2d 335, 340–42 (9th Cir. 1977); *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1207–09 (11th Cir. 2009); *United States v. Wilson*, 160 F.3d 732, 739–41 (D.C. Cir. 1998).

The scope of what comes in under Rule 804(b)(3) includes statements describing the declarant's or others' motives, means, or schemes for the criminal activity. For example, in *Williams*, the court permitted statements that described a triple homicide, named the other person involved, explained "that the victims were shot because of their debts," and detailed that someone else "shot the man in the driver's seat while [the declarant] shot at least one of the other passengers." 506 F.3d at 154–55. In *Saget*, the court permitted statements that explained "how [the declarant and his coconspirator] operated and why their scheme worked." 377 F.3d at 231. In *Monserrate-Valentin*, the court permitted statements detailing a robbery by the declarant and four others and explaining how they all handled "their ill-gotten proceeds," as well as statements that "demonstrate[d] 'an insider's knowledge' as to the activities of the conspiracy." 729 F.3d at 52–55; *see also Fogg*, 666 F.3d at 17 (statements that "demonstrated 'an insider's knowledge of a criminal enterprise and its criminal activities'" are admissible (citation omitted)). In *Tocco*, the court permitted statements describing the hierarchy and roles in a RICO enterprise. 200 F.3d at 414–15. And in *Patterson*, the court permitted statements "about the [gang's] actions in the [rivals'] murders." 819 F.2d at 1503–04.

**2. Many of Huff's statements inculpating himself and Hardisty are admissible under 804(b)(3).**

Based on the agents' notes from interviews with the CHS, it appears that many of Huff's statements inculpating himself and Hardisty would be admissible at a new trial under Rule 804(b)(3). To start, Huff's confession that he and Hardisty killed Joel Silva would come in. *See* Waggener Dec. to New Trial Motion, Ex B at pp. 29, 30, 44. The confession "clearly would tend to subject [Huff] to criminal liability" for murder. *Nazemian*, 948 F.2d at 530. The confession was made to someone Huff perceived as a confidante, near the time of the events, without any attempt to "curry favor with

Defendants' Joint Supp. Memo. re Rule 804(b)(3)
*United States v. Nelson*, et al., No. 17-cr-00533-EMC

*3*

anyone," and without any attempt "to shift blame from himself to others"; thus, the confession "was not made in circumstances which have been found to cast doubt on reliability." *Nazemian*, 948 F.2d at 530. Huff had no reason to lie to the CHS about Hardisty's involvement in the murder. *See id.*

Other evidence in the record supports the fact that Hardisty was involved in the murder with Huff. *See Nazemian*, 948 F.2d at 531 (examining the "existence of corroborating evidence"). Hardisty placed himself at the murder site a few times, although he later recanted. *See* TT1 6504–08; *Nazemian*, 948 F.2d at 531 (finding corroboration where defendant's own testimony confirmed the transaction "though she disclaimed participation"). Hardisty and Huff were in constant communication. Waggener Dec. Ex G. Hardisty was also in constant communication with Silva until the morning of the murder, at which point he ceased communication and never tried to reach Silva again. T2 GX 127, pp. 85, 93. Hardisty's testimony about how he learned about the murder (supposedly from someone else) has been inconsistent. Ott Mot., p. 12. And Hardisty testified that Huff pointed out the crematorium to him sometime before Silva's murder and said, "this is where we're gonna bring him[,]" TT1 2751–52—which takes on new significance in light of Huff's statements that they planned and carried out the murder together. While none of this other evidence conclusively inculpates Hardisty in the murder, it supports Huff's confession that Hardisty helped commit the murder "as clear[ly] as [the Ninth Circuit has] found to be sufficient in other cases." *Nazemian*, 948 F.2d at 531 (describing the type of corroboration that has been found sufficient to suggest the statement's reliability).

The details about the murder and coverup that Huff shared with the CHS also come in under Rule 804(b)(3). The detail that Silva was shot in his truck at close range is a statement against interest because it subjects Huff to liability for murder. *See* Waggener Dec. Ex B at p. 30. The detail that Huff burned Silva's truck is a statement against interest because it subjects Huff to liability for arson and covering up Silva's murder. *See id.* The CDR evidence showed Huff's presence with Levi Phipps at the crematorium on the morning of July 16, 2014, TT2 3525–26, and Huff's statement that Hardisty picked him up at the crematorium is admissible because it helps explain how they covered up the murder, which is against both of their penal interests. *See id.* at p. 22; *Monserrate-Valentin*, 729 F.3d at 52–55 (permitting statements that explained aftermath of robbery). Huff's explanation of Hardisty's role in the coverup does not shift the blame; rather, Huff fully admitted his lead role in the coverup.

Moreover, the details about why Huff and Hardisty killed Silva would come in under Rule 804(b)(3). Huff's admission to the CHS that $30,000 was missing from his, Hardisty's, and Silva's drug deal with the East Coast charters is solidly against his own interests because it implicates him in drug trafficking. *See* Waggener Dec. Ex B at pp. 21, 26, 41. Huff did not try to minimize his own role in the drug deal gone bad or shift the blame onto Hardisty. *Id.* Moreover, Huff's statements that Huff and Hardisty blamed Silva for the shortfall, *id.* at p. 21, and that the murder was planned to make it appear that Huff and Hardisty took care of the problem, *id.*, are admissible to explain the motive for the murder. *See Williams*, 506 F.3d at 155 (permitting statements that explained "the victims were shot because of their debts" and that "the 'Dude owed' money").

The evidentiary hearing will elucidate what statements Huff made to the CHS and what details the CHS knows from personal knowledge. As discussed at the hearing, the additional details that the CHS knows firsthand are separately admissible, and they corroborate Huff's statements. Hearing Tr. July 30, 2026, p. 90. For example, the CHS's knowledge of the drug trafficking based on a U-Haul rental in the CHS's name, her knowledge of the whereabouts of her family's truck that Huff borrowed around the time of the murder, and her knowledge of phone conversations that she had with people involved in Silva's cremation all come in at trial. *Id.*; Waggener Dec. Ex B at pp. 21, 29, 41, 44.

Thus, defendants anticipate that significant evidence implicating Huff and Hardisty will come in at a new trial under Rule 804(b)(3). And any statements by Huff that do not meet the requirements of Rule 804(b)(3) may be admissible under Rule 801(d)(2)(E) or Rule 807. *See Williamson*, 512 U.S. at 604 n.* (underscoring these alternatives to Rule 804(b)(3)); Ott Mot. at pp. 19–21, Foakes Mot. at pp. 8–9, Ranieri Mot. at pp. 15–16 (discussing these rules); *United States v. Layton*, 855 F.2d 1388, 1398 (9th Cir. 1988) (the conspiracy "need not be the same as the charged conspiracy" for Rule 801(d)(2)(E)); *United States v. Nicholas*, 594 F. Supp. 2d 1116, 1127 (C.D. Cal. 2008) (statements about "'efforts to conceal the conspiracy'" are in furtherance of conspiracy); *United States v. Howard*, 774 F.2d 838, 845–46 (7th Cir. 1985) (Rule 807 permits statements by unavailable declarant who witnessed what actually happened). These and other admissibility rules may be applicable, as well.

Dated: August 5, 2026

By: s/ Leah Spero
Counsel for Defendant Russell Ott
On behalf of all Defendants

Defendants' Joint Supp. Memo. re Rule 804(b)(3)
*United States v. Nelson*, et al., No. 17-cr-00533-EMC

5